1
2
3
4
5
6
7
8
9          UNITED STATES DISTRICT COURT

10         SOUTHERN DISTRICT OF CALIFORNIA

11

12   UNITED STATES OF AMERICA,          )   Criminal No. 08-CR-4550-L
                                        )
13                  Plaintiff,          )   **ORDER DENYING DEFENDANT'S**
                                        )   **MOTION TO DISMISS THE**
14   v.                                 )   **INDICTMENT FOR INVALID**
                                        )   **DEPORTATION**
15   ALFREDO ARAUJO-HURTADO,            )
                                        )
16                  Defendant.          )
     _____)

17        On January 16, 2009, Defendant Alfredo Araujo-Hurtado filed a Motion to Dismiss the

18   Indictment for Invalid Deportation; Defendant filed supplemental briefing on February 13, 2009.

19   The Government opposes Defendant's motion and has filed a response and opposition.  On

20   February 2, 2009, the Court took the matter under submission.  Having now fully considered the

21   submissions of the parties and the relevant legal authorities, the Court will deny Defendant's

22   motion for the reasons set forth below.

23                                  **Background**

24        Defendant is charged with being a deported alien found in the United States in violation

25   of 8 U.S.C. § 1326.  In March 2001, Defendant was convicted of Robbery, in violation of

26   California Penal Code §211.  Following his time in custody he was deported.  According to the

27   Government, Defendant has been excluded, deported, and/or removed from the United States to

28   Mexico on the following dates: (1) August 2, 2000; (2) November 3, 2002; (3) December 8,

08CR4550

1 | 2003; (4) February 24, 2005; (5) August 11, 2006; and (6) August 18, 2007.

2 |    Defendant contends that his prior deportations are invalid because he was never advised

3 | by an Immigration Judge that he is a United States citizen or that he has a claim to derivative

4 | citizenship.  Defendant claims that he is an American citizen through double derivation.[1]

5 |    According to Defendant, his grandfather, Jesus Araujo, is a United States citizen.  His

6 | grandfather was born in Thornton, Texas on April 23, 1922, and has lived in the United States

7 | for his entire life.  In December 1951, his grandfather married Anna Maria Perez, who is a

8 | Mexican citizen and Legal Permanent Resident of the United States.  On August 1, 1960,

9 | Defendant's father, Alfredo Araujo Hurtado Sr., was born in Tijuana, Mexico.  Defendant's

10 | father moved to the United States in 1970.  On September 7, 1981, Defendant's father married

11 | his mother, Lilia Hurtado Gamez. On February 4, 1982, Defendant was born in Tijuana, Mexico.

12 | Defendant moved to the United States to live with his father in 1984, when he was 2 years old.

13 | According to the Government, neither Defendant, nor his father, have filed an N-600 seeking a

14 | Certificate of Citizenship.

15 | **Discussion**

16 |    A defendant in a § 1326 prosecution "has a Fifth Amendment right to collaterally attack a

17 | removal order because the removal order serves a predicate element of his conviction." *United*

18 | *States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1047 (9th Cir. 2004).  To succeed in a collateral

19 | challenge to a removal order, a defendant must demonstrate:  "(1) that he exhausted all

20 | administrative remedies available to him to appeal his removal order, (2) that the underlying

21 | removal proceedings at which the order was issued improperly deprived him of the opportunity

22 |

23 |

24 | [1] Defendant relies on INA § 301, which provides that a person shall be a national and a citizen of the United States at birth who is:

25 | born outside of the geographical limits of the United States and its outlying possessions of parents one of whom is an alien, and the other a citizen of the United States, who, prior to

26 | the birth of such person, why physically present in the United States or its outlying possessions for a period or periods totaling not less than ten years, at least five of which

27 | were after attaining the age of fourteen years.

28 | INA § 301(a)(7), 8 U.S.C. § 1401(a)(7) (redesignated as INA § 301(g); 8 U.S.C. § 1401(g)).

08CR4550

1    for judicial review, and (3) that the entry of the order was fundamentally unfair." *Id.* An

2    underlying removal order is "fundamentally unfair" when: (1) the defendant's due process

3    rights were violated by defects in his underlying deportation proceeding, and (2) he suffered

4    prejudice as a result of the defects. *Id.*; *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir.

5    2000).

6         The Government argues Defendant's challenge is barred because he waived his right to

7    appeal in both 2000 and 2005. An alien is barred under § 1326(d) from collaterally attacking his

8    underlying removal order if he validly waived the right to appeal that order because he did not

9    exhaust administrative remedies. *United States v. Garza-Sanchez*, 217 F.3d 806, 808 (9th Cir.

10    2000).

11         Here, neither party has provided the Court with a copy of the transcripts of the 2000 or

12    2005 deportation proceedings, so the Court is unable to determine precisely what was said or

13    done during the hearings. However, the Court finds that the waiver of appeal indication on the

14    face of both the February 24, 2005 Order of the Immigration Judge and the August 2, 2000

15    Order of the Immigration Judge is sufficient to establish a prima facie showing that Defendant

16    validly waived his right to appeal the orders, particularly as the Court has been presented with no

17    evidence that contradicts the existence or the validity of the waivers.

18         Nevertheless, the Court must consider whether Defendant's waiver was considered and

19    intelligent. The exhaustion requirement "cannot bar collateral review of a deportation

20    proceeding when the waiver of right to an administrative appeal did not comport with due

21    process." *United States v. Muro-Inclan*, 249 F.3d 1180, 1183-84 (9th Cir. 2001). Waiver of the

22    right to appeal a removal order does not comport with due process if it was not "considered and

23    intelligent." *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004). Defendant

24    contends that because he was not advised of his claim to derivative citizenship, he could not

25    have executed a "considered and intelligent" waiver. Defendant asserts the mis-advisal excuses

26    his failure to exhaust administrative remedies.

27         Immigration Judges are required to advise the alien of relief from removal if the alien's

28    eligibility to apply for such relief was reasonably apparent from the record. *Muro-Inclan*, 249

         08CR4550

1  F.3d at 1183-84.  However, Immigration Judges "are not expected to be clairvoyant; the record

2  before them must fairly raise the issue: 'Until the [alien] himself or some other person puts

3  information before the judge that makes such eligibility 'apparent,' this duty does not come into

4  play.'" *Moran-Enriquez v. INS*, 884 F.2d 420, 422 (9th Cir. 1989) (citing *Bu Roe v. INS*, 771

5  F.2d 1328, 1334 (9th Cir. 1985)).

6      Here, there is nothing in the record to suggest that Defendant's claim to double derivative

7  citizenship would have been apparent to the Immigration Judge at the time of any of Defendant's

8  deportation hearings.   According to the Government, the audiotape of the 2005 deportation

9  hearing reveals that Defendant stated neither he nor his parents were American citizens.  Further,

10 Defendant does not claim that he ever made the Immigration Judges aware of any facts that

11 would have made his potential eligibility apparent.  Indeed, it appears Defendant himself did not

12 know of any basis for such a claim until recently.  *See* Exhibit 3 Gov't Opp. ("Unfortunately for

13 Alfredo, he has never before been advised that he derived citizenship from his dad. . . . Like his

14 son, Alfredo Sr. had never before been advised he was a U.S. Citizen – or, had any claim to U.S.

15 Citizenship.").  Therefore, the Court finds there was no due process violation in the Immigration

16 Judges' failure to advise Defendant of any potential eligibility for double derivative citizenship.

17 Accordingly Defendant's waiver of appeal and failure to exhaust administrative remedies bar

18 collateral attack of his prior deportation orders.

19      Defendant's Motion to Dismiss the Indictment for Invalid Deportation is **DENIED**.

20      **IT IS SO ORDERED**.

21

22 DATED:  February 18, 2009

23 _____
   M. James Lorenz

24 United States District Court Judge

25

26

27 COPY TO:
   ALL COUNSEL

28

4                                    08CR4550